for the next case. Good morning, Your Honors. Steve Farhol on behalf of the Plaintiff Appellant, Universal Structures Limited. Good morning. Marty Schwartz on behalf of the appellees, Alan and Diane Buchman. I ask you to keep your voices up. It's a little hard to hear you. I presume we have read the briefs, we know the facts, stick to what you think are your important points, and we won't hesitate to ask you questions about what we consider important. Thank you very much. Thank you. Your Honors, my name is Steve Farhol. I represent the Plaintiff Appellant, Universal Structures Limited. Universal appeals the dismissal of its complaint for foreclosure of a mechanics lien based on a noncompliance with the Home Repair and Remodeling Act. It has two issues on appeal. Number one, whether the Home Repair Act bars Universal's complaint, even though neither the legislative intent or language of the Home Repair Act provides for the invalidation of a valid mechanics lien or a dismissal of a complaint to foreclose the same. The second issue is whether Universal's complaint states a claim upon which relief can be granted. It is Universal's position that its procedural noncompliance of not securing a signed work order or providing a consumer rights brochure to the Buckman's does not bar it from enforcing its mechanics lien validly recorded against the Buckman's property under the Illinois Mechanics Lien Act because neither the legislative intent or language of the Home Repair Act dictates an automatic invalidation of a mechanics lien or the dismissal of a complaint based on a noncompliance with its requirements. Also, it submits that it has substantially complied with Section 15 of the Home Repair Act by providing written itemized work orders to the Buckman's for their review and acceptance before starting any of the work on the project. In light of the true legislative intent of the Home Repair Act and the involving interpretation of the Home Repair Act by several Illinois reviewing courts who recognize substantial compliance and a contractor's lien rights despite noncompliance with the Home Repair Act, Universal submits that it has stated a claim upon which relief may be granted and its dismissal by the trial court of its complaint to enforce its mechanics lien rights is in error. And do you know, has the Supreme Court, our Supreme Court, granted PLA in any of these 10, whatever it is, recent Home Repair Act cases? I believe the only case that I am aware of is this Court's McGinnis. They took it in McGinnis? Which is before them as we speak. I don't believe there are any other cases before them. Universal filed a mechanics lien against the Buckman's property to secure an outstanding balance of $104,497.65. It filed suit to enforce that mechanics lien. The Buckman's raised the Home Repair Act as a defense, arguing that Universal violated the Act by failing to secure their signature on the work orders and by not providing them a consumer rights brochure before starting the repair work. It is their position that this invalidates the mechanics lien and bars Universal from enforcing it. This Court should know that this matter has been consolidated with a lawsuit that has been filed on the other side. Buckman's v. Universal. And the Buckman's in that case originally sought, based on the Home Repair Act, a full reimbursement of all monies that they paid based on those violations. Right now, the amount that was charged was in excess of $1.3 million. It's an absurd request. Universal ardently disputes that the Home Repair Act invalidates its mechanics lien and bars its complaint because the Home Repair Act's legislative intent is to safeguard consumers from unfair dealings with contractors and to improve communications between them to increase consumer confidence. Not to provide consumers with an unjust and inequitable way to avoid contractual payment obligations for work completed by contractors. In addition, the legislative intent is surely not to circumvent or supersede the Illinois Mechanics Lien Act or to prevent contractors from pursuing legal rights afforded to them thereunder. We would submit that the trial court was apparently forced to follow precedent in this matter. Unfortunately, precedent is the case of Central Illinois Electric Services v. Slepian and Smith v. Bogart. Those were the cases present at the time. Those were the cases that controlled the trial court's ruling. Unfortunately, Slepian and Bogart were based on an improper analysis of the Home Repair Act. You can take a drink. Thank you. Are distinguishable and they reached unbalanced results. First, the contractors in Slepian and Bogart did not provide written itemized work orders to the consumers. That's not the case here. Universal supplied to the Buckmans several work orders. Those work orders are found in the record, C-51 through C-625. They weren't signed, right? Actually, you are correct, Your Honor. They were not signed. And Universal admits that they were not signed. But Universal submits that they substantially complied with Section 15 of the Home Repair Act. And why do they comply? Number one, the work orders itemize. They identify Universal. They identify the address of Universal. They identify the work to be performed. They identify the costs associated with that. That satisfies the reasonable particularity requirement under Section 15 of the Home Repair Act. The other factor that indicates that they substantially complied with the Act is that the Buckmans were given the opportunity to review each and every work order. This is not a situation where Universal approached the Buckmans and said, you know what, we're going to put a new roof on your house for $4,000. The Buckmans find out after the work is completed on the roof that they're charged $20,000. That's not the case here. That's the legislative intent. That's the goal, to prevent situations like that. In this situation, it's diametrically different. The work orders were presented to the Buckmans. The Buckmans reviewed them. The Buckmans accepted them. Like in McGinnis. And I understand you didn't have the benefit of having McGinnis out there when you filed your lien. You did not file under a quantum Merowit theory here, right? So either you're going to win based on the most recent cases, or they'll win under the Slepian and Bogart. You are correct, Your Honor. We did not file under the theory of quantum Merowit. And I believe that McGinnis is a good case. But I think there's a difference here in this situation. It is our position that this Court, when it ruled that a contractor doesn't waive its equitable remedies, especially under quantum Merowit, the Court found the absence of a written contract or work order very important. It ultimately ruled that an oral contract is not enforceable under the Act. However, we would submit in this situation, we have both. We have an oral contract. There was an agreement between the parties on the procedure. And that procedure was to submit work orders. They would be reviewed and accepted. The acceptance is indicated by payment. And there was payment, a substantial amount of payment on this project. And these work orders were not submitted over a span of a week. It was over, I believe, approximately 11 and a half months. The work orders themselves, that's the written document here. That is the written document that substantially complies. And at least one reviewing court in Illinois has indicated that the existence of that written work order, that is itemized, substantially complies with the legislative intent of the Act, which is to increase consumer confidence and communication between the parties, the consumer and the contractor. In this case, what better example of communication? The work orders. And you're saying that the fact that the work orders weren't signed, that doesn't play a real role here? Your Honor, I am not saying that. The work orders were not signed. And under the Act, that is considered a violation. What I am saying, though, is that the remedy sought or the penalty that is sought, which is an invalidation of the mechanics lien or the dismissal of a complaint to foreclose it, is not present in the Act. If you take a look at the enforcement section, which I believe is in Section 35, it indicates that the penalties and the remedies that the attorney general would have, I believe, are set forth under the Consumer Fraud Act. And when we take a look at the Consumer Fraud Act, the Consumer Fraud Act indicates that there must be actual damages here. There has to be actual damages for there to be any type of, I guess, a problem associated with a procedural noncompliance with the Home Repair Act. And a reviewing court in Illinois has already indicated as much. Kunkel P.K. Development, I believe, has indicated that the lack of at least providing a brochure doesn't fit the bill. It doesn't amount to actually damaging the consumer in this situation. So you're saying that all the work was done, it was called for, and it was done workmanlike? In this situation, this particular situation, yes, Your Honor. It is our position that all the work was performed, and it is in Universal's position that it was workmanlike and was complete. What they're trying to collect is the outstanding amount due. Slepian and Bogart, I want to get back to those cases, which is the root of the trial court's dismissal, unjustly enrich the consumer, especially in this situation, by effectively eliminating a contractor's right to assert his lien rights. And it permits the consumer to retain the full benefit of improvements on their home free of charge without any set off for the value of the work performed. The work performed here was in excess of $1.3 million. The Buckrams today continue to enjoy the improvements and betterments made to their home while my client sits back, has to fight to get the outstanding amounts owed. The legislative intent of the Home Repair Act did not intend that at all. And there's no allegation in their countersuit that the work, or in answer to your mechanic's lien request, that the work was substandard? Not in this matter, Your Honor. In the other lawsuit, that allegation has been made. It is our position that a contractor's failure to comply with either Section 20 or Section 30 of the Home Repair Act does not bar him from asserting his lien rights. The purpose of the Illinois Mechanic's Lien Act is to require a person with interest in real property to pay for improvements or benefits which have been induced or encouraged by his or her conduct. Illinois provides that a contractor's right to a mechanic's lien derives from his performance of either an oral or written contract. As I've indicated previously, we have both here. Although a contractor's failure to provide a consumer with a consumer rights brochure or secure a signed contract is an unlawful violation of the Home Repair Act, such violation does not automatically invalidate the party's agreement. Nowhere in the statute does it indicate that. It is an inequitable result and it's not based on the legislative intent or the language of the Home Repair Act. The Buchmans and Universal discuss the scope and cost of each portion of the repair work. The work was reduced to a written work order, was tendered to the Buchmans for their approval. The Buchmans do not dispute the items in the work orders. Throughout the course of the project, they observed the work being performed. Could you sum this up, please? Universal's noncompliance with the Home Repair Act is a mere procedural oversight on its part. All the elements for a valid contract exist here, including offer acceptance consideration in certain terms. Those were all set forth in the work orders that substantially comply with Section 15 of the Home Repair Act. It is Universal's position that the existence of these work orders substantially complies with the Home Repair Act and does not invalidate its mechanic's liening, gives them a right to state a cause of action in its complaint. Thank you. Thank you. May it please the Court, Marty Schwartz on behalf of the appellees. The Home Remodeling and Repair Act was enacted and became effective in 2000. The contract that was entered into in this case is alleged to be in August of 2006. The appellant states in his brief that his client is a reputable builder. And based on this project, he obviously does high-end remodeling projects because he charged my clients $1.3 million. And just so we're clear, he's suing for I think it's about $140,000. The client's not trying to, it's not an issue before the court that we're not paying for $1.3 million. It's only a bill. But you are trying to recover $1.3 million for all the work they did. Just for the money they already gave. Your Honor, I believe the initial complaint may have alleged that. I was not the trial lawyer. Again, we're not playing the lawyer's friend. All right. So the Act's been around for six years. And it clearly states, it states actually in two sections. It states in Section 15 that the contractor shall submit a contract for signature. And then in Section 30, it says it is unlawful to proceed with a project where you do not have the signed contract. Or where you have not submitted the brochure. It states it's unlawful. For someone to come into court and say, well, even though it's enforceable, the court should, or even though it's unlawful, the court should enforce it, quite frankly, I think is absurd. And the First District, I believe it was the First Division, which is the Kay Miller case, controls this case. Not technically, since it's in the same division, but certainly the reasoning. It clearly states if you didn't comply with the statute, you cannot recover under the contract. And therefore, if you don't have a valid contract, you don't have a valid mechanics claim. You could recover in quantum merit. He didn't plead quantum merit, so that's not an issue before the court. And there's also a recent case called Roberts v. Atkins, which is Third District, January 2010. In Roberts, there was no writing of any kind, right? There were no work orders to submit. Do you think that matters? Yes, but, Your Honor, if we want to go to what he's calling these work orders that are contracts, they're attached to the complaint. And if the justices would review the work orders, I think he's sort of overcharacterized what they are. They are combinations of invoices saying we've done some work, you owe us this, pay us this, we're going to do some other work. It's certainly not anything that anyone looking at it could comprehend exactly what they're... Do you do any mechanics claim work, Mr. Schwartz? I do plenty of it. Okay, great. Well, it seems to me that's what most of them say. I mean, I've written on it lots of times, it's a fluke, but it seems to me that's what they said. Absolutely. Here's what I've done, here's what I'll do, and give me some money and I'll do what I'm supposed to do next time. Almost like lawyers to a certain extent. Or they start, yeah. I agree, and, Your Honor, I represent a lot of contractors, and this statute has caused some pain to my clients. But it's been around for six years. Now, counsel says that it was the legislative intent, it wasn't the legislative intent to declare the contracts unenforceable. I don't know how clear the legislature could say when it's unlawful. However, if there's any doubt about the legislature's intent, they have now amended the statute. It hasn't been signed by the governor, but it's passed both houses, and it deletes the unlawful language. And it says something to the effect that if there's a violation, the homeowner has to prove damages. What's interesting about that amendment, what they could have done, what the legislature could have done, is kept the statute and just amended to say nothing in this statute is going to determine that the contract is unenforceable, and that's the statement that's just clarifying the statute. We're not trying to change it. No, instead, the legislature went out and amended it to delete the unlawful language. I think that clearly shows that they intended the unlawful meant it was unenforceable. Well, I think the response is a slew of cases we see in the trial courts and the courts of review. And if I can, in the amended statute, so it says that the homeowners, the person receiving the services, has to prove damages. But then I take it it allows, assuming they fail to prove damages, that a mechanic's lien would be attached to the property. It deletes, that would be the reasoning of it. It deletes the unlawful language. So that would essentially agree with Bell, Fandel, and Artisan Design adopting that reasoning for the future. Absolutely. And quite frankly, in light of all the turmoil it's caused, it's probably a good amendment to the statute. But, Your Honor, the appellant here has focused on how harsh this rule is. And I would submit, is it any harsher than the statute of frauds? Statute of frauds requires a signature. You can't escape the statute of frauds by saying there was a written document but it wasn't signed. The credit agreement app, which is even harsher than the statute of frauds, that says there's no cause of action at all against a bank unless it's signed by both parties. And very recently, as of May 25th, I believe, the First District, relying in part on McGinnis, ruled in the case of Carlton at the Lake versus Barber, that the Nursing Home Care Act, which requires the responsible party to sign a contract saying he'll be responsible for the patient's fees, that in that case they ruled that the nursing home could not recover on the contract against the responsible person because the responsible person did not sign the contract. But said they could recover in Quantum, Maryland. I don't know if you need the docket number on that or the Westlaw site. Thank you. All right. I believe that's reaffirmed and it makes reference to the Miller versus McGinnis case. Well, again, I don't know your connection to the case, but obviously somebody involved with your side in this case thought it was appropriate for harshness. This will be the first. We don't have in front of us the other part of the suit where your clients have said yes and we deserve the $1.1 million back from the contractor. I don't know what could be harsher than saying I was really happy that I gave you the money. It's wonderful. I not only don't want to pay the last $100,000, I want every nickel I gave to you back because you didn't give me this form and you didn't give me my signature. You got my million dollar in a series of checks, but you failed to ask me to sign the piece of paper. Your Honor, it's not a count that I would have filed and there's no court that has even suggested that the homeowner could get his money back. I would suggest that they do. So if we were to follow Slepian and Bogart, I would suggest it's rational. Why not? It's void. If a contractor says void, it's void once you get your stuff signed. It's conceivable. I'm not outraged by it at all. I think it's a logical conclusion, if we follow Slepian and Bogart, that will allow such a thing. But if we agree with Slepian and Bogart, why not tell all the people who are very happy with the rules or not, go get those contractors. They snookered you and didn't get your signature. Pay them back. Get back the money for the work you got done. I could address that in two ways. One, generally if a contract is found to be against public policy, the courts leave the parties where they're at. It doesn't allow one party to get a refund or the other party to get a refund. I think that principle would be applicable. Second, in the first district case of Miller v. McGinnis, they specifically ruled that the contractor can still recover in quantum meroit. So in that case, the contractor would be protected. I do want to, though, mention, my clients filed the complaint first. And in that complaint, arguably we asked for the money back. But we've also alleged that there's defects in the performance. And more importantly, that we were defrauded. That there was representations that these were the costs of the job plus his general contractor fee of 15%. And what he did was he added in all his costs without telling us. So we do have a claim pending for fraud.  Counsel for the appellant is suggesting that this statute is somehow overruling or undermining the Mechanics-Lean Act. It's not at all. It doesn't even address the Mechanics-Lean Act. The Mechanics-Lean Act requires a valid contract. There's lots of statutes that may invalidate contracts, et cetera. If there's no valid contract, then someone cannot recover in Mechanics-Lean. Still recover in quantum meroit. But the Home Remodeling Act doesn't in any way undermine the Mechanics-Lean. It's just neutral. It's saying if you don't have a signed contract, then you cannot enforce that contract or it would be unlawful. Correct me if I'm wrong. The way I looked at this act was to encourage communication between the contractor and between the homeowner. Is that right? A thousand percent. A thousand percent it was to encourage communication and actually detail so both parties understand their rights. As I previously mentioned, I do a lot of Mechanics-Lean work. And almost every case is a he said, she said, particularly on extras. And the statute, I think, was intended to state that put in writing exactly what you're expected to pay and what I'm exactly going to do. And there was a writing. And it was tendered to the homeowner. And the homeowner said, don't go any further. Is that what happened? There were writings. There were multiple work orders that were a combination of invoices and or work. About this $100,000 we're talking about. Just for this $100,000? No, for the whole case. For the whole case there was invoices. How much is $100,000? It was the last $100,000, right? $130,000. It's about $130,000, but I can't say it was for the last $130,000 of work done. Did the homeowner have all the invoices in his possession before the work was done? Absolutely not. Absolutely not. And I have a copy of the complaint if you'd like to take a look at it. Not invoices, work orders. What he's calling work orders are a combination of work orders and invoices. Is there a word? We have it in the record. We have the complaint on record. Okay. I'm just looking at the first one. It says trim labor deposit paid, $24,000. Balance trim labor due July 30th, 07. That's what they're calling a work order. Again, it's narratives, as Justice Quinn said. Maybe it's typical combination invoice. This is what I've done. This is what I'm going to do. But this was not a case where we have a written proposal. This is everything we're going to do. This is everything we're going to charge. And my client orally said, go ahead. You can't, right? I mean, this is a tear down initially. The interior is torn down. Now what they're going to put in, they're going to put in. And I don't know how often, how common it would be for someone to say, yes, cut my house. But when you do that, before I sign the contract, I want to know exactly what you're going to put in. That would be, I think, different. I don't know how many people can know exactly what they want to have done to their house. Let's say I want a dorm room put on, or in this case probably some really nice rooms to be redone. How would they know exactly what they wanted? Well, the It's not the nature of mechanics doing the work as I see it. The, I believe it was the McGinnis case, Miller-McGinnis case, addressed that. That's what the contractor said. It was on a time and material basis, how can I possibly have complied with the statute? And the court said, you're supposed to comply with the statute, and you could, it would be very simple. We want this room done. Here's the proposal. Here's what the price is. Sign off on it. Well, theoretically, and I'm not asking you to concede anything, is if they had given them the piece of paper, which they say, by the way, here's your rights under this act, which includes the fact that I could sue you or file a lien against your home, and sign these work orders, you really wouldn't have a case. Right? And again, I'm not asking you to concede. This won't be in the opinion. How dare they concede it, which we often do. Causes my client to sue me. Yes, we won't do that to you. He sounds like a litigious fellow. We won't do that to you. Thank you very much. Well, to address it, if they would have gotten the consumer brochure that said, make sure you got lien waivers, my clients, and this is, I believe, alleged in the current complaint, before they paid, they would have gotten lien waivers from the subcontractors and saw what the subcontractors were getting paid. What he told us is he was charging us subcontractors plus 15%. What he ended up charging us was double. But, again, whether the statute is sort of fair and how to interpret it, it says what it says. And it could very easily have said, just submit, just put it in writing, it made a point to make it signed. Okay. Unless there's any other questions. Thank you very much. Thank you. Thank you. Counsel, we've read everything. Just be brief. I'll be brief. You can do that. Just for clarification, our lawsuit was at the pleading stage. That's all it was. It was at the pleading stage. There's a lot of facts that have been submitted before this Court that are not in the record. The trend of the Illinois courts so far from Slepian and Bogart has been to balance the equities between the consumer and the contractor. And it's understandable and it's the right thing to do here. It militates toward upholding a contractor's mechanic lien rights when they substantially comply with the Home Repair Act despite a mere procedural noncompliance. Rather than to provide a consumer free improvements to their home at the expense of a contractor who neglects to comply procedurally with the Home Repair Act. It speaks volumes that the legislator decided not to include a remedy that permitted consumers to avoid a mechanic's lien. Nowhere in the Act. We didn't hear it from our police counsel. We don't see it in the Act. Does it indicate that you can invalidate it? And also thereafter release the consumer from any and all liability for work that's already been performed, completed. They have that right to question whether the work was done wrongly or defectively. That's a breach of contract lawsuit. That's separate from this matter. Under mechanic's lien don't they also have a right to say I don't have the lien waivers so I'm not giving you the money. Although they didn't do that here. Right? Absolutely, Your Honor. That's not the case as you just indicated. The Act provides specific remedies in Section 35B. None of which include the invalidation of the mechanic's lien or the dismissal of my client's complaint.  Thank you, Your Honors. Thank you. The court will take this case under advisement and the court will be in recess.